**IN THE COURT OF APPEALS OF IOWA**

No. 23-1986
Filed April 10, 2024

**IN THE INTEREST OF G.B.,**
**Minor Child,**

**P.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Gabriel Brio Porter of Porter Law Firm of Iowa, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Tonya A. Oetken of Oetken Law Firm, Inc, Ankeny, attorney and guardian ad litem for minor child.


Considered by Schumacher, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of both parents of fourteen-year-old G.B. Only the mother appeals. She challenges the statutory grounds authorizing termination and whether termination is in the child's best interests given her close bond with the child. While the mother's petition on appeal also makes passing references to seeking a guardianship or additional time to work toward reunification as alternatives to termination, the mother does not develop these references into reviewable arguments, so we deem them waived. *See In re E.W.*, No. 22-0647, 2022 WL 2347196, at *2 (Iowa Ct. App. June 29, 2022).

## I.      Standard and Nature of Review

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

## II.      Statutory Grounds

The juvenile court found grounds authorizing termination satisfied under Iowa Code section 232.116(1)(d) and (f) (2023). As the mother's rights were terminated on multiple grounds, we affirm if either of the grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We elect to focus on paragraph (f), which permits termination upon sufficient proof that

(1) the child is four years of age or older; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the parents for at least twelve of the last eighteen months; and (4) the child cannot be returned to the custody of the parent. Iowa Code § 232.116(1)(f).

The mother only challenges the fourth element. She claims the child could be safely returned to her custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4) ("There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102."); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

The Iowa Department of Health and Human Services became involved with this family following reports that the mother put her hands down the child's pants and rubbed the child's thighs to "check[ ] on the medicine" previously placed on some bug bites, made the child cut the mother's pubic hair, made the child take photos of the mother's genitals, and showed the child nude photos of the mother's paramour. The mother also brought men into the home to have sexual intercourse. The child could see and hear the mother's sexual activities because the child slept on a couch that faced the mother's bedroom doorway and there was no door. Additionally, the child disclosed that the mother had removed the stove, refrigerator, and microwave from the family home—requiring the child to sustain herself on pre-packaged snack foods.

The mother and child began family therapy together. But the therapist recommended they attend individual therapy instead because the mother "was not able to take accountability for the safety concerns that brought th[e] family to the

attention of the department." Once therapy shifted to an individual format, the mother was asked to not linger in the lobby during the child's sessions because it hindered the child's ability to openly communicate with the therapist. The mother expressed her discomfort with the child being able to speak to a therapist without her being present. Then she and her sister showed up at the child's therapy appointment despite the prior directive not to be present for the sessions.

The mother's inappropriate conduct carried over to visitation with the child. She struggled to respect personal boundaries set by the child and would repeatedly touch the child and discuss prohibited topics. Visits between the mother and child were suspended as a result and at the child's request. Given the mother's lack of progress and insight as to how her conduct has impacted the child, visits never resumed.

Still, the mother contends she can resume custody of the child because she installed a bedroom door in her home, replaced missing appliances, made several additional repairs to the home, attended counseling, and completed various parenting classes. But the mother still has not admitted to engaging in any sexual conduct with the child and seems unaware of the inappropriate nature of her conduct. At the termination hearing, the mother was adamant that no inappropriate conduct occurred and claimed people are trying to portray her as a "pervert." Her own therapist explained, "[The mother] is more focused on her needs currently and not [the child]'s."

Given the mother's self-focused approach and refusal to admit to her past harmful conduct, we conclude she does not have the tools to be able to safely parent the child. As a result, the child could not be safely returned to the mother's

custody at the time of the termination hearing, and a statutory ground for termination has been established.

## III.    Best Interests

When considering best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *Id.* at 41.

Termination is in the child's best interests.  At the core of this case is the fact that the mother is not a safe caregiver.  Conversely, the child is currently placed with her older brother and is doing well in his care.  The child explained that she is "really happy living" with her brother and his paramour and that she is "really happy" to have them "to help [her]."  Her brother informed the juvenile court, "I love having her here. . . .  It's a joy to be with her and to see her heal and be able to help her with big life questions and thoughts and feelings.  . . . [I]t's an honor to help her with all of her needs, if I can."  He went on to explain that she is doing well both socially and academically and summed up his assessment of his sister by noting, "I'm just proud of everything about her, honestly."  It is clear to us that the child's needs are best met through termination so that she can achieve permanency through adoption.

## IV. Parent-Child Bond as an Exception to Termination

Still the mother contends her strong bond with the child should preclude termination. Iowa Code section 232.116(3)(c) gives the court discretion to forgo termination when the bond between parent and child is so strong that "termination would be detrimental to the child." However, the mother has not established a bond of such magnitude. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018) (recognizing a parent seeking application of a permissive exception to termination has the burden to establish such an exception). Further, the child specifically requested termination at the termination hearing. As the child's request is well-supported by the other evidence, we honor her preference and do not apply a permissive exception to termination.

**AFFIRMED.**